**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JOSE LEONARDO BRITO GUEVARA and BEATRIZ ZULAY GUEVARA FLORES, | § § § | |
| Petitioners, | § § | |
| v. | § § | Civil Action No. _____ |
| SAMANTHA ESTEFANIA FRANCISCO CASTRO, | § § § | |
| Respondent. | § | |

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD**

Petitioners Jose Leonardo Brito Guevara and Beatriz Zulay Guevara Flores respectfully show this Court as follows:

## I. INTRODUCTION

1.     This action is brought by Petitioners Jose Leonardo Brito Guevara ("Mr. Brito" or "Father") and Beatriz Zulay Guevara Flores ("Ms. Guevara" or "Grandmother") (collectively, "Petitioners") under the United Nations Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11670, 19 I.L.M. 1501, (the "Hague Convention") and the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* ("ICARA"). The Hague Convention came into effect in the United States on July 1, 1988, and has been ratified between the United States, Venezuela, and over 80 other Contracting States.

2.     The Hague Convention and ICARA have two overarching purposes: to "secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other contracting States." Exhibit A, Hague Convention, Art. 1(a)-(b).

3.      The Hague Convention and ICARA provide a rapid remedy for the left-behind parent to return the Child to the status quo before the wrongful removal or retention. *See id.*, Art. 11 ("The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.").

4.      One goal of the Hague Convention and ICARA is to prevent forum shopping by returning the child to his or her home jurisdiction so that a custody determination can be made there. To that end, courts outside the child's original home country are precluded from considering the merits of the underlying custody dispute.

5.      Mr. Brito, a citizen of Venezuela and resident of Spain, is the father of four-year-old daughter, A.F. (the "Child").[1]

6.      Ms. Guevara, a citizen and resident of Venezuela, is the grandmother of the Child and mother of Mr. Brito. Ms. Guevara was the caretaker and provider for the Child at the time of removal.

7.      The Child's mother, Respondent Samantha Estefania Francisco Castro ("Mother" or "Respondent"), without Petitioners' consent or acquiescence, wrongfully removed the Child from Venezuela and brought her to the Eastern District of Texas.

8.      Through this action, Petitioners seek to secure the return of the Child to Venezuela as required by the Hague Convention and ICARA.

## II.    JURISDICTION AND VENUE

9.      Mr. Brito is a citizen of Venezuela and resident of Spain.

10.     Ms. Guevara is a citizen and resident of Venezuela.

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2(a)(3), only the initials of the minor Child are provided. The undersigned can provide the full name of the minor Child in a sealed filing or *in camera*.

11.    Respondent is a citizen of Venezuela, who, on information and belief, now resides with the Child in Lewisville, Texas.

12.    This Court has jurisdiction over this case pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

13.    Venue is proper pursuant to 22 U.S.C. § 9003(b) and 28 U.S.C. § 1391(b) because, upon information and belief, Respondent and the Child are residing in the Eastern District of Texas, specifically in Lewisville, Denton County, Texas. A copy of the letter from the United States Department of State indicating Respondent's and the Child's residence is attached hereto as Exhibit B.

### III.    STATEMENT OF FACTS

**A.    The Child's Country of Habitual Residence is Venezuela.**

14.    Mr. Brito and Respondent are the parents of the Child. They were never married.

15.    The Child was born on March 5, 2018 in Peña, Yaracuy, Venezuela. The Child's birth certificate identifies Mr. Brito as the father and Respondent as the mother. A redacted copy of the Child's birth certificate and a translation thereof are attached hereto as Exhibit C.

16.    Ms. Guevara is the mother of Mr. Brito and the grandmother of the Child.

17.    After the Child was born in May 2018, the Child, Mr. Brito and Respondent moved into Ms. Guevara's, the Grandmother, home so that Ms. Guevara could help care for the Child while Mr. Brito finished his studies at school and began to work.

18.    Roughly a year later, Respondent—alone—moved out of Ms. Guevara's home and into the home of her own parents. Mr. Brito, Respondent, and Ms. Guevara all agreed that the Child would continue living at Ms. Guevara's home under Petitioners' joint care. Petitioners permitted Respondent to take the Child for unsupervised weekend visits, which occurred at the Child's maternal grandparents' home.

19.    In or about August 2021, when the Child was two years old, Mr. Brito accepted a job in Spain. Around this time, Respondent and Mr. Brito collectively decided to grant Ms. Guevara full custody of the Child so that she could continue to raise the Child while Mr. Brito traveled to Spain.  Both Respondent and Mr. Brito agreed that it was in the best interest of the Child to remain living at Ms. Guevara's house, under her care.

20.    The Child was born in Venezuela and resided with Petitioners, in Ms. Guevara's home in Venezuela, from her birth until the wrongful removal.

**B.    The Child Was Removed to the United States Without Petitioners' Consent.**

21.    After Mr. Brito received and accepted a job offer from employer based in Spain, but before moving to Spain, Respondent informed Petitioners that she was planning to illegally immigrate to the United States. In response, Mr. Brito explicitly told Respondent not to take the Child with Respondent if and when she left for the United States. Ms. Guevara also explicitly told Respondent not to take the Child with Respondent if and when she left for the United States.

22.    Mr. Brito recognized that he would not be able to monitor Respondent's plans to illegally immigrate to the United States from Spain as fully as his mother, Ms. Guevara, could from Venezuela.  As such, shortly before he left Venezuela for Spain, and in an effort to prevent Respondent from attempting to remove the Child from Venezuela without his authorization, Mr. Brito granted Ms. Guevara a sweeping power of attorney.

23.    While in Spain, Mr. Brito communicated with the Child via telephone calls and WhatsApp messaging service. Mr. Brito also remitted money to Venezuela to be used for the care of the Child. During this time, and with the consent of both parents, the Child remained living at Ms. Guevara's house and Ms. Guevara performed all day-to-day care of her.

24.    Recognizing the importance of maintaining a positive relationship with the Child's Mother, Ms. Guevara would occasionally permit Respondent to pick up the Child for overnight

stays with Respondent at Respondent's parent's home. These visits were never to exceed three days, something both Ms. Guevara and Respondent agreed on in advance. These overnight stays typically occurred on weekends.

25.     On November 27, 2021, just a little more than two months after Mr. Brito had left for Spain, Ms. Guevara traveled to Respondent's parent's home to pick up the Child after a visit. When she arrived, Respondent's parents informed Ms. Guevara that, the day prior, Respondent had absconded with the Child to the United States.

26.     Sometime thereafter, Respondent illegally entered the United States with the Child.

27.     Petitioners did not consent or acquiesce to the removal of the Child by Respondent to the United States in any way.

28.     Since the removal, Mr. Brito has attempted to communicate daily with the Child via telephone and WhatsApp. Respondent, however, typically only allows the Child to speak with Mr. Brito a couple times a week.

29.     Mr. Brito continues to remit money to Respondent to be used for care of the Child.

30.     Since 2021, Petitioners have repeatedly asked Respondent to return the Child to Venezuela. Respondent has stated that she intends to keep the Child in the United States.

31.     For example, in December 2021, Ms. Guevara asked Respondent to return the Child to Venezuela. Respondent refused and told Ms. Guevara that she intends to keep the Child in the United States. Respondent then blocked Ms. Guevara on all social media applications and refuses to allow Ms. Guevara to communicate with the Child in any form.

32.     On December 22, 2021, Ms. Guevara was granted official guardianship of the Child by the Third Court of First Instance of Mediation and Substantiation of Children and Adolescents Protection of the Judicial District of Yaracuy State. *See* Exhibit D.

33.    On January 20, 2022, Ms. Guevara filed an application under the Hague convention with Venezuelan authorities to seek the return of the Child.  Venezuelan authorities referred this matter to the United States Department of State, who referred this matter to Petitioners' counsel at Alston & Bird LLP.

34.    On November 7, 2022, as a part of processing Ms. Guevara's application for assistance under the Hauge Convention, the State Department mailed a letter to Respondent requesting that she work with Ms. Guevara to resolve the Parties' dispute or otherwise voluntarily return the Child to Venezuela. *See* Exhibit E. Respondent did not respond to the letter.

35.    Since entering the United States, Respondent has lived with the Child at numerous addresses, but now lives in Lewisville, Texas.

36.    It is unknown whether Respondent and the Child continue to lack legal immigration status.

**C.    Respondent's Removal Violated Petitioners' Rights of Custody Under Venezuelan Law.**

37.    Both Petitioners had rights of custody under Venezuelan law.

38.    The laws of the country of the child's habitual residence are used to determine rights of custody.[2]

39.    The Venezuelan Constitution states that "the father and mother of a child have a shared and irrevocable duty to raise, educate, support, and assist their children." Republic of Venezuela Const., Art. 76. Venezuelan law describes these responsibilities and obligations as *patria potestas*, and *patria potestas* constitute rights of custody. *See Rivero v. Godoy*, No. 18-23087-Civ-COOKE/GOODMAN, 2018 U.S. Dist. LEXIS 225035, at *8 (S.D. Fla. 2018)

---

[2] To determine whether a party has "rights of custody" "courts must apply the laws of the country of the child's habitual residence to determine if the non-removing parent had 'rights of custody.'" *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 343 (5th Cir. 2004).

(applying Venezuelan law and finding *patria postestas* were custody rights under the Hague Convention and ICARA).

40.    When Respondent took the Child without Mr. Brito's consent, she violated his *patria potestas*, thus violating his custody rights.

41.    Additionally, Venezuelan law provides that children can only travel outside the country if they are accompanied by both parents or with only one of them if there is authorization from the other parent in the form of an authenticated document. *See* Organic Law for the Protection of Juveniles and Adolescents, Art. 392. This is also known as a *ne exeat* right, which is also considered a right of custody under the Hague Convention. *Abbott v. Abbott*, 560 U.S. 1, 20 (2010). A *ne exeat* right is defined as "the authority to consent before the parent may take the child to another country." *Id.* at 5. Taking a child out of the country without the consent of the remaining parent violates that parent's *ne exeat* right, thus violating rights of custody.

42.    When Respondent took the Child without Mr. Brito's consent, she violated his *ne exeat* right.

43.    Ms. Guevara's rights were also violated.

44.    Not only did the Child solely reside with Ms. Guevara prior to the wrongful removal, Ms. Guevara also had the ability to exercise Mr. Brito's *ne exeat* right because Mr. Brito signed a power of attorney before leaving for Spain that gave Ms. Guevara the ability to exercise his *ne exeat* right.

45.    Respondent thus violated Petitioners' rights of custody when she removed the Child from Venezuela without the consent of Ms. Guevara or Mr. Brito.

**D.    Petitioners Were Exercising Their Rights of Custody at the Time of Removal.**

46.    Mr. Brito was exercising his right of custody prior to the removal. Although Mr. Brito was working in Spain at the time of removal, he maintained contact with the Child and

made efforts to see and care for the Child. As detailed above, he maintained a loving relationship with the Child, remained in constant contact with the Child, and provided money for her benefit. Mr. Brito did not ever abandon the Child. He gave Ms. Guevara power of attorney because he was worried the Respondent would try and abscond with the Child.

47.    Ms. Guevara was also exercising her right of custody at the time of removal. The Child was residing with Ms. Guevara pursuant to the collective agreement by Respondent and Petitioners. Aside from the occasional weekend visits with Respondent, Ms. Guevara was the sole caretaker and provider for the Child at the time of removal. Ms. Guevara financially provided for the Child and had a loving relationship with the Child.

## IV.    CAUSES OF ACTION

### A.    Count One– Claim for Relief Under the Hague Convention

48.    Petitioners incorporate by reference all facts and allegations set forth in the foregoing paragraphs and further alleges the following:

49.    The Hague Convention and ICARA apply in this case because the Child is less than sixteen-years old and the United States and Venezuela are both "Contracting States" under the Hague Convention.  Ex. A, Hague Convention, Arts. 1, 4.

50.    The Hague Convention and ICARA require the return of children wrongfully removed to or retained in the United States to their home country. *See id.*, Art. 12.

51.    The removal or retention of a child is wrongful when (a) it is in breach of the left-behind parent's rights of custody in the country where the child was habitually resident before removal and (b), at the time of the removal or retention, the left-behind parent was actually exercising those rights, either jointly or alone, or would have exercised those rights but for the removal or retention. *Id.*, Art. 3.

52.     Rights of custody may arise by operation of law or by reason of a judicial or administrative decision. *Id*. Rights of custody include rights relating to the care of the child and, in particular, the right to determine the child's place of residence. *Id*., Art. 5(a).

53.     As shown above, the Child was a habitual resident in Venezuela prior to her removal, thus Venezuelan law governs the Petitioners' rights of custody.

54.     As shown above, Petitioners had rights of custody under Venezuelan law.

55.     As shown above, Petitioners were exercising their rights of custody prior to Respondent's wrongful removal of the Child to the United States and would have continued exercising those rights but for Respondent's removal and retention of the Child.

56.     Respondent therefore violated the Hague convention and ICARA by breaching Petitioners' rights of custody.

**B.     Count Two – Attorney's Fees and Costs.**

57.     Petitioners incorporate by reference all facts and allegations set forth in the foregoing paragraphs and further allege the following:

58.     Pursuant to 22 U.S.C. § 9007, Petitioners respectfully request that this Court award them all necessary expenses incurred by or on behalf of Petitioners, including court costs, legal fees, or other care during the course of proceedings in the action, and transportation costs related to the return of the Child.

## V.     NOTICE

59.     Petitioners incorporate by reference all facts and allegations set forth in the foregoing paragraphs and further allege the following:

60.     Pursuant to 22 U.S.C. § 9003(c), Respondent shall be given notice of this Petition in accordance with Rule 4 of the Federal Rules of Civil Procedure.

## VI.　RELIEF REQUESTED

**WHEREFORE,** Petitioners Jose Leonardo Brito Guevara and Beatriz Zulay Guevara

Flores pray for the following relief:

a) An immediate temporary restraining order prohibiting the removal of the Child from the jurisdiction of this Court pending a hearing on the merits of this Petition, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the Child from the jurisdiction of this Court pending a determination on the merits of this Petition;

b) The scheduling of an expedited preliminary injunction hearing on the merits of this Petition;

c) An order that Respondent show cause at this hearing why the Child should not be returned to Venezuela, and why such other relief requested in this Petition should not be granted;

d) Pursuant to Federal Rules of Civil Procedure 40 and 65, 22 U.S.C. § 9003(d), and Article 2 of the Hague Convention (requesting that signatories to the Convention "use the most expeditious procedures available"), an order that the trial of the action on the merits be advanced and consolidated with the hearing on the preliminary injunction;

e) A final judgment ordering that the Child be returned to Venezuela, where— consistent with the Hague Convention—an appropriate custody determination can be made by a Venezuelan court under Venezuelan law;

f) An order requiring that Respondent pay Petitioners' expenses, including court costs, legal fees, or other care during the course of proceedings in the action, and transportation costs related to the return of the Child;

g) An order that Respondent sign all necessary forms and make necessary arrangements to allow the Child to return to Venezuela; and

h) Any such further relief as may be just and appropriate under the circumstances of this case.

Dated: April __19__, 2023

Respectfully submitted,

*/s/ Sam Bragg*

Sam Bragg
  State Bar No. 24097413
  Sam.Bragg@alston.com
Mia L. Falzarano
  State Bar No. 24105847
  Mia.Falzarano@alston.com
Laura B. Hunt
  State Bar No. 24120912
  Laura.Hunt@alston.com
ALSTON & BIRD LLP
2200 Ross Avenue, Ste. 2300
Dallas, TX 75201
(214) 922-3400 – Telephone
(214) 922-3899 – Facsimile

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare that I have read the foregoing VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILDREN. I declare under penalty of perjury under the laws of the United States that the factual allegations in the foregoing are true and correct.

Executed this __7__ day of April, 2023.

_____
Jose Leonardo Brito Guevara

_____
Beatriz Zulay Guevara Flores

**EN EL TRIBUNAL FEDERAL DE PRIMERA**
**INSTANCIA DEL DISTRITO DEL ESTE, DE**
**LA DIVISIÓN SHERMAN, DE TEXAS**

| | | |
|---|---|---|
| **JOSE LEONARDO BRITO GUEVARA y** | § | |
| **BEATRIZ ZULAY GUEVARA FLORES,** | § | |
| | § | |
| **Demandantes,** | § | |
| | § | |
| **contra** | § | **Acción Civil N°.** |
| | § | |
| **SAMANTHA ESTEFANIA FRANCISCO** | § | |
| **CASTRO,** | § | |
| | § | |
| **Demandada.** | | |

**DEMANDA VERIFICADA Y PETICIÓN DE RESTITUCIÓN DEL NIÑO**

Los Demandantes Jose Leonardo Brito Guevara y Beatriz Zulay Guevara Flores se dirigen respetuosamente al Tribunal para expresar lo siguiente:

## I.    INTRODUCCIÓN

1.    Esta acción es iniciada por los Demandantes Jose Leonardo Brito Guevara ("Sr. Brito" o El Padre) y Beatriz Zulay Guevara Flores ("Sra. Guevara" o "La Abuela") (colectivamente, "Los Demandantes"), en virtud del Convenio de Las Naciones Unidas de La Haya sobre los Aspectos Civiles de la Sustracción Internacional de Menores, Series de Tratados y Otras Actas N° 11670, Documentos Legales Internacionales 19 1501, (el "Convenio de La Haya") y la Ley sobre los Remedios para la Sustracción Internacional de Menores, Título 22 del Código Federal de los Estados Unidos y siguientes, ("ICARA" por sus siglas en inglés). El Convenio de La Haya comenzó a tener vigencia en los Estados Unidos el 1 de julio de 1988 y ha sido ratificada entre los Estados Unidos, Venezuela, y alrededor de 80 otros Estados Contratantes.

2.    El Convenio de La Haya y la ICARA tienen dos propósitos principales: "asegurar

1

la pronta restitución de niños que han sido ilegalmente removidos o detenidos en cualquier Estado Contratante" y "asegurar que los derechos de custodia y de acceso bajo la ley de un Estado Contratante sean efectivamente rrespetados en otros Estados C Anexo A, Convenio de La Haya, Art. 1(a)-(b).

3.      El Convenio de La Haya y la ICARA brindan un rápido remedio para que el padre que fue dejado atrás pueda restituir al niño al status quo en el que estaba antes del traslado o retención de forma ilícita. *Ver ídem, Artículo 11 (*"Las autoridades judiciales o administrativas de los Estados Contratantes actuarán con urgencia en los procedimientos para la restitución de los menores").

4.      Uno de los objetivos del Convenio de La Haya y de la ICARA es evitar los foros de conveniencia, al restituir al niño a la jurisdicción de su hogar, para que allí se pueda realizar una determinación sobre su custodia. Para tal fin, se impide que los tribunales que se encuentran fuera del país de residencia original del niño traten los méritos de la subyacente disputa sobre la custodia.

5.      El Sr. Brito, ciudadano de Venezuela y residente de España, es el padre de una hija de cuatro años, A.F. (la "Niña").[1]

6.      La Sra. Guevara, ciudadana y residente de Venezuela, es la abuela de la Niña y madre del Sr. Brito. La Sra. Guevara era la persona que brindaba cuidado y provisiones a la Niña cuando se realizó el traslado.

7.      La madre de la Niña, la Demandada Samantha Estefania Francisco Castro ("La Madre" o "La Demandada"), sin el consentimiento ni la conformidad del Demandante, trasladó ilícitamente a la Niña desde Venezuela y la trajo al Distrito Este de Texas.

---

[1]De acuerdo con las Reglas Federales del Proceso Civil 5.2(a)(3), solo se muestran las iniciales de la Niña.  La persona que firma puede brindar el nombre completo de la menor en un sobre sellado, o en cámara.

8.    A través de esta acción, los Demandantes buscan asegurar la restitución de la Niña a Venezuela tal como lo exigen el Convenio de La Haya y la ICARA.

## II.  <u>JURISDICCIÓN Y COMPETENCIA TERRITORIAL</u>

9.    El Sr. Brito es ciudadano de Venezuela y residente de España.

10.    La Sra. Guevara es ciudadana de Venezuela y residente de Venezuela.

11.    La Demandada es ciudadana de Venezuela, quien, según información y convicción, ahora reside con la Niña en Lewisville, Texas.

12.    Este Tribunal tiene jurisdicción sobre el caso según el Título 22 del Código Federal de los Estados Unidos, artículo 9003(a) (jurisdicción bajo el Convenio de La Haya) y el Título 28 del Código Federal de los Estados Unidos, artículo 1331 (jurisdicción sobre la cuestión federal):

13.    La competencia territorial es apropiada de acuerdo con el Título 22 del Código Federal de los Estados Unidos, artículo 9003(b) y el Título 28 del Código Federal de los Estados Unidos, artículo 1331 (b) porque, según el saber y entender, la Demandada y la Niña están residiendo en el Distrito Este de Texas, específicamente en Lewisville, Denton County, Texas. Se adjunta a este documento una copia de una carta del Departamento de Estado de Los Estados Unidos, que indica el lugar de residencia de la Demandada y la Niña.

## III.    <u>LOS HECHOS</u>

**A.    El país de residencia habitual del Niño es Venezuela.**

14.    El Sr. Brito y la Demandada son los padres del Niño. Ellos nunca estuvieron casados.

15.    La Niña nació el 5 de marzo de 2018 en Peña, Yaracuy, Venezuela. El certificado de nacimiento de la Niña identifica al Sr. Brito como el padre y a la Demandada como la madre. Se adjuntan a este documento, como Anexo C, una copia del certificado de nacimiento de la Niña y su correspondiente traducción.

3

16.    La Sra. Guevara, es la madre del Sr. Brito y la abuela de la Niña.

17.    Luego de que la Niña naciera en mayo del 2018, la Niña, el Sr. Brito y la Demandada se mudaron a la casa de la Sra. Guevara, la abuela, para que la Sra. Guevara pudiera colaborar con el cuidado de la Niña mientras el Sr. Brito terminaba sus estudios en la escuela, y comenzaba a trabajar.

18.    Alrededor de un año más tarde, la Demandada (sola) dejó la casa de la Sra. Guevara y se mudó a la casa de sus propios padres. El Sr. Brito, la Demandada, y la Sra. Guevara acordaron que la Niña continuaría viviendo en la casa de la Sra. Guevara bajo el cuidado conjunto de los Demandantes. Los Demandantes le permitieron a la Demandada llevar a la Niña a visitas de fin de semana no supervisadas, lo que se llevaba a cabo en la casa de los abuelos maternos de la Niña.

19.    Alrededor del mes de agosto del año 2021, cuando la Niña tenía dos años de edad, el Sr. Brito aceptó un trabajo en España. Aproximadamente en este momento, la Demandada y el Sr. Brito decidieron conjuntamente otorgarle a la Sra. Guevara la custodia de la Niña, para que ella pudiese continuar criando a la Niña mientras el Sr. Brito viajaba a España. Tanto la Demandada como el Sr. Brito estuvieron de acuerdo en que lo mejor para la Niña era seguir viviendo en la casa de la Sra. Guevara, bajo su cuidado.

20.    La Niña nació en Venezuela y vivió con los Demandantes, en la casa de la Sra. Guevara en Venezuela, desde su nacimiento hasta su traslado ilegal.

**B.    La Niña fue trasladada a los Estados Unidos sin el consentimiento del Demandante.**

21.    Luego de que el Sr. Brito recibió y aceptó una oferta de trabajo de un empleador situado en España, pero antes de que se mudara a España, la Demandada informó a los Demandantes que ella estaba planificando emigrar ilegalmente a los Estados Unidos. En respuesta a ello, el Sr. Brito solicitó a la Demandada explícitamente que no llevara a la Niña

4

consigo si se iba a los Estados Unidos o cuando se fuera a los Estados Unidos. La Sra. Guevara también solicitó a la Demandada explícitamente que no llevara a la Niña consigo si se iba a los Estados Unidos o cuando se fuera a los Estados Unidos.

22.    El Sr. Brito reconoce que el no podría monitorear los planes de la Demandada para emigrar ilegalmente a los Estados Unidos desde España como podía hacerlo su madre, la Sra. Guevara, desde Venezuela. Por lo tanto, antes de irse de Venezuela a España, y en un intento de evitar que la Demandada intentara llevarse a la Niña de Venezuela sin su autorización, el Sr. Brito otorgó a la Sra. Guevara un poder legal de representación.

23.    Mientras estaba en España, el Sr. Brito se comunicaba con la niña a través de llamadas telefónicas y mensajes de WhatsApp. El Sr. Brito también enviaba dinero a Venezuela para que fuese destinado a los cuidados de la Niña. Durante este tiempo, y con el consentimiento de los padres, la Niña continuó viviendo en la casa de la Sra. Guevara y la Sra. Guevara se encargó de todas las tareas de cuidado diario para ella.

24.    Al reconocer la importancia de mantener una relación positiva con la madre de la Niña, la Sra. Guevara permitía ocasionalmente que la Demandada buscara a la Niña para pasar la noche con la Demandada en la casa de los padres de la Demandada. Estas visitas nunca podían exceder los tres días, según habían acordado por anticipado la Sra. Guevara y la Demandada. Estas estadías durante las noches generalmente sucedían los fines de semana.

25.    El 27 de noviembre de 2021, solo un poco más de dos meses luego de que el Sr. Brito se fuera a España, la Sra. Guevara fue a casa de los padres de la Demandada para recoger a la Niña luego de una visita. Cuando llegó, los padres de la Demandada le informaron a la Sra. Guevara que el día anterior, la Demandada se había fugado con la Niña a los Estados Unidos.

26.    Un tiempo después, la Demandada ingresó ilegalmente a los Estados Unidos con la Niña.

27.    Los Demandantes no consintieron ni accedieron al traslado de la Niña hacia los Estados Unidos por parte de la Demandada de ninguna forma.

28.    Desde el traslado, el Sr. Brito ha intentado comunicarse diariamente con la Niña por vía telefónica y por WhatsApp. Sin embargo, la Demandada generalmente solo permite a la Niña hablar con el Sr. Brito algunas veces a la semana.

29.    El Sr. Brito sigue enviando dinero a la Demandada para que sea destinado a los cuidados de la Niña.

30.    Desde el año 2021, los Demandantes han solicitado reiteradamente a la Demandada que restituya a la Niña a Venezuela. La Demandada les ha comunicado que pretende mantener a la Niña dentro de los Estados Unidos.

31.    Por ejemplo, en diciembre de 2021, la Sra. Guevara solicitó a la Demandada que restituya a la Niña a Venezuela. La Demandada se negó y le respondió a la Sra. Guevara que ella pretende mantener a la Niña dentro de los Estados Unidos. Luego, la Demandada bloqueó a la Sra. Guevara en todas las redes sociales y se niega a permitir que la Sra. Guevara se comunique con la Niña de cualquier manera.

32.    El 22 de diciembre de 2021, el Juzgado Tercero de Primera Instancia de Mediación y Sustanciación del Circuito Judicial de Protección de Niños, Niñas y Adolescentes de la Circunscripción Judicial del Estado Yaracuy otorgó la custodia oficial de la Niña a la Sra. Guevara. Véase Anexo D.

33.    El 20 de enero de 2022, la Sra. Guevara envió una petición en virtud del Convenio de La Haya a autoridades venezolanas para solicitar la restitución de la Niña. Las autoridades venezolanas refirieron este asunto al Departamento de Estado de los Estados Unidos, que refirió este asunto al abogado de los Demandantes, en Alston & Bird LLP.

34.    El 7 de noviembre de 2022, como parte del procesamiento de la solicitud de asistencia de la Sra. Guevara bajo Convenio de La Haya, el Departamento de Estado envió una carta a la Demandada solicitándole que colaborara con la Sra. Guevara para resolver la disputa entre las Partes, o que voluntariamente restituyera a la Niña a Venezuela. Véase el Anexo E. La

6

Demandada no respondió esa carta.

35.    Desde que ingresó a los Estados Unidos, la Demandada ha vivido con la Niña en varios domicilios, pero ahora vive en Lewisville, Texas.

36.    Se desconoce si la Demandada y la Niña siguen sin tener estado de inmigrantes legales.

**C.    El traslado que realizó la Demandada infringió los derechos de custodia de los Demandantes bajo la ley venezolana.**

37.    Ambos Demandantes tenían derechos de custodia bajo la ley venezolana.

38.    Las leyes del país de residencia habitual del niño son usadas para determinar los derechos de custodia.[2]

39.    La Constitución Venezolana establece que "el padre y la madre de un niño tienen una obligación compartida e irrevocable de criar, educar, mantener y brindar asistencia a sus niños". Constitución de la República de Venezuela, Artículo 76. La ley venezolana describe estas obligaciones y responsabilidades como *patria potestas*, y la *patria potestas* constituye los derechos de custodia. Véase *Rivero v. Godoy*, N° 18- 23087-Civ-COOKE/GOODMAN, 2018 U.S. Dist. LEXIS 225035, at *8 (S.D. Fla. 2018) (aplicando la ley venezolana y encontrando *patria potestas* donde se otorgan derechos de custodia bajo el El Convenio de La Haya y la ICARA).

40.    Cuando la Demandada se llevó a la Niña sin el consentimiento del Sr. Brito, ella violó su *patria potestas*, infringiendo por lo tanto sus derechos de custodia.

41.    Adicionalmente, la ley venezolana establece que los niños sólo pueden viajar fuera del país si son acompañados por ambos padres, o solo por uno de ellos si existe una autorización del otro padre, que esté respaldada por un documento autenticado. Véase el artículo 392 de la Ley Orgánica para la Protección de Juveniles y Adolescentes. Esto también es

---

[2] Para determinar si una parte tiene "derechos de custodia" "los tribunales deben aplicar las leyes del país de residencia habitual del niño para determinar si el padre que no trasladó al niño tenía «derechos de custodia»". *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 343 (Tribunal para el Quinto Circuito 2004).

conocido como un derecho *ne exeat,* el cual también es considerado un derecho de custodia bajo el Convenio de La Haya. *Abbott v. Abbott*, 560 U.S. 1, 20 (2010). Un derecho *ne exeat se define como* "la autoridad para prestar consentimiento antes de que el padre traslade al niño a otro país". Ídem en el 5. Trasladar a un niño fuera del país sin el consentimiento del otro padre infringe el derecho *ne exeat* de ese padre, y por lo tanto viola los derechos de custodia.

42.     Cuando la Demandada se llevó a la Niña sin el consentimiento del Sr. Brito, ella violó su derecho *ne exeat.*

43.     También se violaron los derechos de la Sra. Guevara.

44.     La Niña no solo residía con la Sra. Guevara antes del traslado ilícito, sino que además la Sra. Guevara tenía la capacidad de ejercer el derecho *ne exeat* del Sr. Brito porque el Sr. Brito había firmado un poder legal antes de irse a España que otorgó a la Sra. Guevara la capacidad de ejercer su derecho *ne exeat.*

45.     Por lo tanto, la Demandada violó los derechos de custodia de los Demandantes cuando trasladó ilegalmente a la Niña fuera de Venezuela sin el consentimiento de la Sra. Guevara o el Sr. Brito.

**D.  Los Demandantes estaban ejerciendo sus derechos de custodia al momento en el que ocurrió el traslado.**

46.     El Sr. Brito estaba ejerciendo su derecho de custodia antes de que ocurriera el traslado. Aunque el Sr. Brito estaba trabajando en España en el momento en que ocurrió el traslado, él mantenía contacto con la Niña y se esforzaba para ver y cuidar a la Niña. Como se detalló arriba, él mantuvo una relación muy cercana con la Niña, permaneció en contacto constante con la Niña, y brindó dinero para su beneficio. El Sr. Brito nunca abandonó a la Niña. Él otorgó a la Sra. Guevara un poder legal porque le preocupaba que la Demandada intentara fugarse o se fugara con la Niña.

47.    La Sra. Guevara estaba ejerciendo su derecho de custodia al momento en el que ocurrió el traslado. La Niña estaba viviendo con la Sra. Guevara en cumplimiento del acuerdo conjunto entre la Demandada y los Demandantes. Excepto por las visitas ocasionales de fin de semana con la Demandada, la Sra. Guevara era la única persona que brindaba cuidado y provisiones a la Niña cuando se realizó el traslado. La Sra. Guevara sustentaba económicamente a la Niña y mantenía una relación de cariño con ella.

## IV.    FUNDAMENTOS

### A.    Primer planteo– Solicitud de remedio bajo el Convenio de La Haya

48.    Los Demandantes incorporan a través de su referencia todos los hechos y alegatos que se detallan en los párrafos precedentes, y adicionalmente alegan lo siguiente:

49.    El Convenio de La Haya y la ICARA aplican a este caso porque la Niña es menor de dieciséis años de edad y Estados Unidos y Venezuela son ambos "Estados Contratantes" bajo el Convenio de La Haya. Anexo A, Convenio de La Haya, Artículos 1, 4.

50.    El Convenio de La Haya y la ICARA exigen que los niños que han sido ilegalmente trasladados o retenidos en los Estados Unidos sean restituidos a su país de residencia. Véase ídem, artículo 12.

51.    El traslado o la retención de un menor se considerarán ilícitos: a) cuando se hayan producido con infracción de un derecho de custodia del padre que fue dejado, en el país en que el menor tenía su residencia habitual antes de su traslado; y b) cuando al momento de dicho traslado o retención, el padre que fue dejado estaba efectivamente esos derechos, ya sea de manera conjunta o individual, o los hubiera ejercido de no ser por el traslado o retención. Ídem, artículo 3.

52.   Los derechos de custodia pueden surgir conforme a derecho o por motivos de una decisión judicial o administrativa. Ídem. Los derechos de custodia incluyen los derechos relacionados con el cuidado del niño, y en particular, el derecho a determinar el lugar de residencia del niño. Ídem, artículo 5(a).

53.   Tal como se muestra anteriormente, la Niña era residente habitual de Venezuela antes de su traslado, por lo tanto la ley venezolana rige los derechos de custodia de los Demandantes.

54.   Tal como se muestra anteriormente, los Demandantes tenían derechos de custodia bajo la ley venezolana.

55.   Tal como se muestra anteriormente, los Demandantes estaban ejerciendo sus derechos de custodia previamente al traslado ilegal de la Niña a los Estados Unidos y habrían seguido ejerciéndolos de no ser por el traslado y retención de la Niña por parte de la Demandada.

56.   Por lo tanto, la Demandada infringió el Convenio de La Haya y la ICARA al violar los derechos de custodia de los Demandantes.

**B.   <u>Segundo planteo</u>– Honorarios del abogado y costos.**

57.   Los Demandantes incorporan a través de su referencia todos los hechos y alegatos que se detallan en los párrafos precedentes, y adicionalmente alegan lo siguiente:

58.   De acuerdo con el Artículo 9007 del Título 22 del Código Federal de los Estados Unidos, los Demandantes solicitan respetuosamente que este Tribunal les otorgue todos los gastos necesarios que han sido incurridos por o en nombre de los Demandantes, incluyendo los costos del tribunal, los gastos legales, u otros cuidados en el transcurso del proceso de esta acción, y los costos relacionados con el transporte para la restitución de la Niña.

## V.    NOTIFICACIÓN

59.  Los Demandantes incorporan a través de su referencia todos los hechos y alegatos que se detallan en los párrafos precedentes, y adicionalmente alegan lo siguiente:

60.  De acuerdo con el Artículo 9003(c) del Título 22 del Código Federal de los Estados Unidos, la Demandada debe ser notificada de esta Petición conforme a la Regla 4 de las Reglas Federales del Procedimiento Civil.

## VI.    REMEDIOS SOLICITADOS

**POR LO TANTO,** *los Demandantes* Jose Leonardo Brito Guevara y Beatriz Zulay Guevara Flores solicitan los siguientes remedios:

a) Una orden de restricción temporaria inmediatamente para prohibir el traslado de la Niña fuera de la jurisdicción de este Tribunal cuando está pendiente una audiencia sobre los méritos de esta Petición, y que además establezca que ninguna persona actuando en conjunto o colaborando con la Demandada tome acción alguna para trasladar a la Niña fuera de la jurisdicción de este Tribunal cuando está pendiente una audiencia sobre los méritos de esta Petición;

b) La programación de una audiencia preliminar expedita de mandamiento judicial sobre los méritos de esta Petición;

c) Una orden para que la Demandada demuestre en esta audiencia por qué la Niña no debería ser restituida a Venezuela, y por qué los demás remedios solicitados en esta Petición no deberían otorgarse;

d) Conforme a las Reglas 40 y 65 de las Reglas Federales del Procedimiento Civil, el Artículo 9003(d) del Título 22 del Código Federal de los Estados Unidos, y el Artículo 2 del Convenio de La Haya (que exige que aquellos que suscriben al Convenio "utilicen los procedimientos más expeditos que estén disponibles"), una orden de que el juicio sobre la acción en los méritos avance y se consolide con la audiencia preliminar de mandamiento judicial;

e) Una sentencia final que ordene la restitución de la Niña a Venezuela, donde, de acuerdo con el Convenio de La Haya, un tribunal Venezolano pueda realizar una determinación apropiada de la custodia, bajo la ley venezolana;

f) Una orden que exija que la Demandada pague los gastos que han sido incurridos por los Demandantes, incluyendo los costos del tribunal, los gastos legales, u otros cuidados en el transcurso del proceso de esta acción, y los costos relacionados con el transporte para la restitución de la Niña;

11

g) Una orden para que la Demandada firme todos los formularios necesarios y realice todos los arreglos necesarios para permitir que la Niña vuelva a Venezuela; y

h) Cualquier otro remedio que sea considerado justo y apropiado bajo las circunstancias de este caso.

Fechado el día: 7 de abril, 2023

Se presenta respetuosamente,

*/s/ Samuel P. Bragg*

Samuel P. Bragg
  N° de Colegiado Estatal
  (State Bar No.) 24097413
  Sam.Bragg@alston.com
Mia L. Falzarano
  N° de Colegiado Estatal
  (State Bar No.) 24105847
  Mia.Falzarano@alston.com
Laura B. Hunt
  N° de Colegiado Estatal
  (State Bar No.) 24120912
  Laura.Hunt@alston.com
ALSTON & BIRD LLP
2200 Ross Avenue, Ste. 2300
Dallas, TX 75201
(214) 922-3400 – Teléfono
(214) 922-3899 – Fax

## VERIFICACIÓN

En virtud del Artículo 1746 del Título 28 del Código Federal de los Estados Unidos, declaro que he leído la DEMANDA VERIFICADA Y PETICIÓN DE RESTITUCIÓN DEL NIÑO que precede. Declaro bajo pena de perjurio en virtud de las leyes de los Estados Unidos que las alegaciones fácticas precedentes son ciertas y correctas.

Firmado este __7__ de abril de 2023.

_____
Jose Leonardo Brito Guevara

_____
Beatriz Zulay Guevara Flo

12