UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JOSE LEONARDO BRITO GUEVARA, ET AL.<br><br>v.<br><br>SAMANTHA ESTEFANIA FRANCISCO CASTRO | §<br>§<br>§<br>§  CIVIL NO. 4:23-CV-345-SDJ<br>§<br>§<br>§ |

### TEMPORARY RESTRAINING ORDER

Before the Court is Petitioners' Emergency Application for Ex Parte Temporary Restraining Order and Scheduling of Expedited Preliminary Injunction Hearing. (Dkt. #2). On May 2, 2023, the Court held an ex parte hearing on the motion. (Dkt. #8). Petitioners Jose Leonardo Brito Guevara ("Brito" or "Petitioner") and Beatriz Zulay Guevara Flores ("Guevara" or "Petitioner") seek a temporary restraining order preventing Respondent Samantha Estefania Francisco Castro ("Castro" or "Respondent") from leaving the jurisdiction with minor child, A.F., until an expedited hearing on the merits is held. After considering the motion, the record, argument presented at the hearing, and the relevant law, the Court **GRANTS** Petitioners' request for a temporary restraining order until May 18, 2023, as detailed *infra* Section IV.

1

## I. BACKGROUND[1]

This is an international child abduction case brought under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 ("Hague Convention")[2] and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001–11. Brito and Castro, both Venezuelan nationals, previously were in a relationship but never married. (Dkt. #1 ¶¶ 9–11, 14). They have one daughter together, A.F., who is four years old and is a native citizen of Venezuela. (Dkt. #1 ¶¶ 14–16). For the first year of the child's life, Brito, Castro, and A.F. lived with Guevara, Brito's mother. (Dkt. #1 ¶¶ 17–18). About a year later, Castro moved out of Guevara's home and moved in with her parents, while Brito and A.F. remained with Guevara. (Dkt. #1 ¶ 18). During this time, Brito and Guevara permitted Castro to take A.F. for unsupervised weekend visits. (Dkt. #1 ¶ 18).

Around August 2021, when A.F. was two years old, Brito accepted a job in Spain. (Dkt. #1 ¶ 19). Because of Brito's impending move, Brito and Castro entered into an informal arrangement granting Guevara full custody of A.F. so that she could continue raising the child while Brito worked abroad. (Dkt. #1 ¶ 19).

Before Brito left for Spain, Castro informed him that she intended to illegally immigrate to the United States. (Dkt. #1 ¶ 21). Brito told her not to take A.F. with

---

[1] Because Respondent has yet to be served with this lawsuit, these background facts are presented as alleged in Petitioners' complaint. The factual background may change once Respondent responds to the allegations.

[2] The United States and Venezuela are signatories to the Hague Convention.

her in the event she left for the United States. (Dkt. #1 ¶ 21). To ensure that Castro did not remove A.F. from Venezuela without his consent while he was working in Spain, Brito granted Guevara a broad power of attorney. (Dkt. #1 ¶ 22).

When Brito left for Spain, A.F. continued living with Guevara, with the consent of both Brito and Castro. (Dkt. #1 ¶ 23). Brito maintained communication with A.F. through telephone calls and WhatsApp messaging and sent money to Venezuela to support A.F. (Dkt. #1 ¶ 23).

While A.F.'s primary residence remained with Guevara, Guevara permitted Castro to on occasion host A.F. for overnight visits, not to exceed three days. (Dkt. #1 ¶ 24). After one of those overnight visits in November 2021—about two months after Brito had left for Spain— Guevara went to pick up A.F., only to find out from Castro's parents that Castro had absconded with A.F. to the United States. (Dkt. #1 ¶ 25). Thereafter, Brito and Guevara repeatedly asked Castro to return A.F. to Venezuela, to no avail. (Dkt. #1 ¶ 30).

In December 2021, Guevara was granted official guardianship of A.F. by the Third Court of First Instance of Mediation and Substantiation of Children and Adolescents Protection of the Judicial District of Yaracuy State in Venezuela. (Dkt. #1 ¶ 32); (Dkt. #1-5). About a month later, Guevara filed an application with Venezuelan authorities under the Hague Convention seeking the return of A.F. (Dkt. #1 ¶ 33). The matter was subsequently referred to the United States Department of State, which mailed a letter to Castro requesting that she resolve this dispute with Guevara

or voluntarily return the child to Venezuela. (Dkt. #1 ¶ 34); (Dkt. #1-6). Castro did not respond to the letter. (Dkt. #1 ¶ 34). This lawsuit ensued. (Dkt. #1).

## II. LEGAL STANDARD

The standard for obtaining a temporary restraining order ("TRO") is the same as that for obtaining a preliminary injunction. *See Gambino v. Doe*, No. 3:19-CV-413-S-BN, 2019 WL 1261597, at *3 (N.D. Tex. Feb. 22, 2019) ("[T]he same four-factor test for preliminary injunctions also has been extended to temporary restraining orders . . . ." (quotation omitted)), *adopted by* 2019 WL 1255085 (N.D. Tex. Mar. 19, 2019); *Bowling v. Dahlheimer*, No. 4:18-CV-00610-ALM-CAN, 2018 WL 6582826, at *1 (E.D. Tex. Oct. 3, 2018). Indeed, a TRO has been aptly described as "simply a highly accelerated and temporary form of preliminary injunctive relief." *Lee v. Verizon Commc'ns, Inc.*, No. 3:12-CV-4834-D, 2012 WL 6089041, at *1 n.2 (N.D. Tex. Dec. 7, 2012) (quotation omitted). The plaintiff must therefore establish the following four elements to obtain a TRO:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the [temporary restraining order] is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the [temporary restraining order] may do to defendant, and (4) that granting the [temporary restraining order] will not disserve the public interest.

*Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)). A temporary restraining order is an "extraordinary and drastic remedy" that "should only be granted when the movant has clearly carried the burden of persuasion." *Id.* (quotation omitted).

### III. DISCUSSION

Because Petitioners have satisfied the elements for injunctive relief, the Court will grant a TRO. The Court addresses each element in turn.

**A. Likelihood of Success on the Merits**

The Court must first determine whether Brito and Guevara have a substantial likelihood of succeeding on the merits of their Hague Convention and ICARA claim. The Court finds that they do.

The Hague Convention and ICARA empower courts to order the return of children removed or retained in violation of the Hague Convention. *See* 22 U.S.C. § 9001(b)(4); *Abbott v. Abbott*, 560 U.S. 1, 9, 130 S.Ct. 1983, 176 L.Ed.2d 789 (2010). However, neither the Hague Convention nor ICARA authorizes courts to determine the merits of the underlying custody dispute. *See* 22 U.S.C. § 9001(b)(4). Instead, the court's inquiry is limited to determining whether the child has been wrongfully removed from their country of "habitual residence." *See Smith v. Smith*, 976 F.3d 558, 561–62 (5th Cir. 2020) (citation omitted). If the child has been wrongfully removed, the court must order the child's return, unless certain exceptions apply. *Abbott*, 560 U.S. at 9. "It is then up to the courts of the 'habitual residence' to decide the substantive merits of the underlying custody issue." *Smith*, 976 F.3d at 562 (citation omitted).

The removal or retention of a child is wrongful if the petitioner proves by a preponderance of the evidence that: (1) the respondent removed or retained the child somewhere other than the child's habitual residence; (2) the removal or retention was in breach of the petitioner's rights of custody under the laws of the country of habitual

residence; and (3) the petitioner was exercising those custody rights at the time of removal or retention or would have exercised those rights but for the removal or retention. *Delgado v. Osuna*, 837 F.3d 571, 577 (5th Cir. 2016). Brito and Guevara have established a substantial likelihood of succeeding on each factor.[3]

***First***, Petitioners have established that there is a substantial likelihood that A.F.'s habitual residence is Venezuela and that Castro removed A.F. from Venezuela to the United States. *See Saldivar v. Rodela¸* 879 F.Supp.2d 610, 618 (W.D. Tex. 2012) ("A threshold inquiry in a Hague [Convention] action is: what country was the child's habitual residence immediately before the alleged wrongful removal or retention."). "The place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence." *Monasky v. Taglieri*, 140 S.Ct. 719, 726, 206 L.Ed.2d 9 (2020). As Petitioners allege, A.F. was born in Venezuela and lived her entire life in Venezuela before Castro brought her to the United States. Accordingly, Petitioners have established a substantial likelihood that Castro removed A.F. from the child's habitual residence when she brought her to the United States.

***Second***, Petitioners have established that there is a substantial likelihood that Castro's removal of A.F. from Venezuela breached Petitioners' rights to custody under Venezuelan law. Here, Petitioners are able to point to at least four buckets of evidence supporting their custodial rights under Venezuelan law: (1) the Venezuelan

---

[3] Respondents in Hague Convention cases may assert several narrow affirmative defenses. *Soto v. Contreras*, 880 F.3d 706, 710 (5th Cir. 2018) (citing 22 U.S.C. § 9003(e)(2); Hague Convention, arts. 12, 13, 20). However, the Court cannot predict at this time whether Castro will assert or successfully establish any defense in this case.

Constitution, which affords "the father and mother of a child . . . a shared and irrevocable duty to raise, educate, support, and assist their children,"[4] (2) the Hague Convention's *ne exeat* right of a parent "to consent before the other parent may take the child to another country,"[5] (3) the informal custody arrangement between Brito and Castro before Brito left for Spain—in which the two allegedly agreed that Guevara would care for A.F. while Brito was in Spain,[6] and (4) a Venezuelan court's December 2021 ruling granting Guevara guardianship over A.F.[7] The Court finds that these factors—as viewed in their totality—are sufficient to demonstrate that there is a substantial likelihood that Castro violated Venezuelan law in bringing A.F. to the United States without Brito's or Guevara's consent.

***Third***, Petitioners have established that there is a substantial likelihood that they were exercising their rights of custody at the time of removal. If "a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention *short of acts that constitute clear and unequivocal abandonment of the child." Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 345 (5th Cir. 2004) (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (6th Cir. 1996)). From the record presently

---

[4] *Crespo Rivero v. Carolina Godoy*, No. 18-23087-CIV, 2018 WL 7577757, at *3 (S.D. Fla. Oct. 12, 2018) (quoting Republic of Venezuela Const., Art. 76).

[5] *Abbott*, 560 U.S. at 5.

[6] *See supra* Section I.

[7] *See* (Dkt. #1-5 at 5–6). If there is any question whether Guevara should have guardianship or custody over the child, that is an issue left to the Venezuelan courts.

7

before the Court, it appears that Brito and Guevara were exercising their custodial rights in November 2021 when Castro brought A.F. to the United States.

***As to Brito***, there is no evidence presently before the Court of abandonment or relinquishment of his custodial rights. To the contrary, Brito was allegedly communicating with the child via telephone calls and WhatsApp messaging and remitting money to care for the child—both of which have continued following Castro's removal of A.F. from Venezuela. (Dkt. #1 ¶¶ 23, 28–29). Further, it appears that Brito's decision to provide a power of attorney to Guevara before he left for Spain, which included key aspects of Brito's parental rights concerning A.F., was expressly undertaken in order to ensure that the child would not be removed from Venezuela by Castro while Brito was overseas. (Dkt. #1 ¶ 22).

***As to Guevara***, there is similarly no evidence presently before the Court of abandonment or relinquishment of her custodial rights. Indeed, at the time Castro absconded with A.F., Guevara was A.F.'s primary caregiver and only permitted Castro visitation for discrete periods of time. (Dkt. #1 ¶¶ 23–24). It further appears that Guevara was exercising those custodial rights in November 2021 when she went to pick up A.F. from Castro's care only to discover that Castro had absconded with the child. (Dkt. #1 ¶ 25). Thus, Petitioners have established that there is a substantial likelihood that they were exercising their custodial rights in November 2021 when Castro absconded with A.F.

Accordingly, Petitioners have satisfied the first element of a TRO—a substantial likelihood of success on the merits.

**B. Likelihood of Irreparable Harm in the Absence of the Requested Relief**

Because of the risk that Castro could relocate with the child when served with this lawsuit—further complicating Petitioners' ability to resolve this case and be reunited with their daughter and granddaughter—Petitioners have established that they will suffer irreparable harm if an injunction restricting Castro from leaving the jurisdiction is not granted. *See, e.g.*, *Hernandez v. Erazo*, No. SA-22-CV-01069-XR, 2022 WL 12039669, at *4 (W.D. Tex. Oct. 19, 2022) (finding irreparable harm under similar circumstances); *Garza Rodriguez v. Escamilla Lara*, No. DR-13-CV-077-AM, 2013 WL 12109029, at *2 (W.D. Tex. Oct. 25, 2013) (same). Indeed, this relief is consistent with ICARA, which permits courts to take measures to "prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a). Accordingly, the irreparable harm requirement is satisfied.

**C. The Balance of Equities**

The balance of equities also favors granting injunctive relief. Because this case is set for an expedited trial in one month, Castro will suffer minimal burdens from an order not to leave the jurisdiction with the child. Indeed, this Order merely maintains the status quo whereby Castro remains with the child in this jurisdiction. And such a minimal burden of restricted travel is far outweighed by the interest in ensuring that A.F. is not removed from the jurisdiction during the pendency of these proceedings. Accordingly, Petitioners have satisfied this requirement as well. *See, e.g.*, *Hernandez*, 2022 WL 12039669, at *4 (finding the balance of equities favored injunctive relief under similar circumstances).

**D. The Public Interest**

Next, the Court concludes that the public interest is served in granting this injunction as the relief requested is explicitly authorized by the Hague Convention—which has been ratified by the United States and Venezuela—and ICARA. *See* 22 U.S.C. § 9004(a). Therefore, "[b]ecause enforcing the Hague Convention is consonant with international and federal law," the Court finds that it is in the public interest to issue this TRO. *Hernandez*, 2022 WL 12039669, at *4.

**E. Federal Rule of Civil Procedure 65(b)**

Finally, Petitioners satisfy Federal Rule of Civil Procedure 65(b)'s requirements for obtaining a TRO without providing notice to Castro. Rule 65(b) permits a court to issue a TRO without notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Petitioners indicate that they have not provided Castro with notice of the TRO motion because "Respondent has already absconded with the Child to the United States against the pre-communicated wishes of Mr. Brito and Ms. Guevara by plotting to deceive Ms. Guevara." (Dkt. #2 at 24) (citing Dkt. #1 ¶¶ 21, 25–26). Petitioners are concerned that, if given notice, Castro will flee the jurisdiction with the minor child. (Dkt. #2 at 24).

Based on the circumstances of this case, including Castro's decision to abscond to the United States with A.F., and the risk that she may flee the jurisdiction when served with this lawsuit, the Court concludes that Petitioners have satisfied Rule 65(b)'s requirements. *See, e.g., Esparza v. Nares*, No. 4:22-CV-03889, 2022 WL 16963998, at *4 (S.D. Tex. Nov. 16, 2022) (granting ex parte TRO on similar grounds); *Garcia v. Contreras*, No. 3:13-CV-2609, 2013 WL 12100779, at *2 (N.D. Tex. July 12, 2013) (same). Accordingly, the Court issues this TRO without prior notice to Respondent.

## IV. CONCLUSION AND SCOPE OF INJUNCTION

For the foregoing reasons, the Court hereby **GRANTS** Petitioners' Emergency Application for Ex Parte Temporary Restraining Order and Scheduling of Expedited Preliminary Injunction Hearing. (Dkt. #2).

According to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Based on the fact that there is little likelihood that the Respondent will suffer any costs or damages during the pending expedited proceedings, the Court **WAIVES** any required security by the Petitioners at this time. Should the Respondent prove otherwise, or should the need arise for security, the Court will order such additional security at that time.

It is **ORDERED** that pursuant to Federal Rule of Civil Procedure 65(b)(2), the TRO will go into effect immediately and last for fourteen days, unless a motion is filed

11

to extend it. Accordingly, unless extended by the Court, this TRO expires on **May 18, 2023**, **at 4:00 p.m.**

It is further **ORDERED** that this case shall be set for a consolidated preliminary injunction and trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2) commencing on **June 1, 2023, at 9:00 a.m.** at the United States Courthouse located at 7940 Preston Road in Plano, Texas and continuing through June 2, 2023, if necessary. Each party will be allotted seven hours for their presentation—including submission of evidence and argument. At the consolidated injunction hearing and trial on the merits, Respondent must show cause why the child—A.F.—should not be returned to Venezuela as requested in Petitioners' verified complaint.

It is further **ORDERED** that Respondent Samantha Estefania Francisco Castro shall:

1. Within three days of being served with this Order, surrender the child's (A.F.'s) travel documents to the custody of the Court. Such travel documents include, but are not limited to, passports, visas, green cards, and any other document concerning their immigration status that could permit her to travel.

2. Within three days of being served with this Order, provide the Court and Petitioners with her current contact information and address for herself and the child (A.F.).

3. Remain in the jurisdiction of this Court and is prohibited from removing the child (A.F.) from the jurisdiction of this Court.

**So ORDERED and SIGNED this 4th day of May, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE